UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                Criminal No. 16-20460

v.

                                        Hon.  Mark A. Goldsmith

D-6 DEVONTAE RUSSELL,
          a/k/a "Tae Tae"

                    Defendant.
_____/

**OPINION & ORDER**
**REGARDING DEFENDANT'S VIOLATIONS OF SUPERVISED RELEASE**
**CONDITIONS**

This matter is before the Court on Probation Officer David Smith's petition for issuance of an emergency warrant for Defendant Devontae Russell's violation of supervised release (Dkt. 1331).  Russell began serving a three-year term of supervised release after his release from prison on August 3, 2020.  The petition alleges three violations of Russell's conditions of supervised release: (i) Russell assaulted the mother of his child, L.B., on October 1, 2020;[1] (ii) Russell committed the additional offenses of false imprisonment and aggravated criminal trespass on October 3, 2020; and (iii) Russell failed to return to Michigan as ordered by a probation officer on October 2, 2020.  Id. at PageID.15924-15925.  On March 2, 2021, the Court held a hearing to determine whether Russell violated the conditions of his supervised release.  For the reasons that follow, the Court finds that Russell violated the conditions of his supervised release.

_____

[1] To protect her identity, L.B. is referred to by her initials.

## I.  BACKGROUND

### A.  Supervised Release Conditions and Release from Custody

On August 20, 2018 Russell entered a guilty plea to racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and was sentenced to a term of 27 months of imprisonment, to be followed by a three-year term of supervised release.  Judgment (Dkt. 656).  The conditions of his supervised release include that he not commit crimes and that he follow his probation officer's instructions regarding supervised release.  Id. at 3-4.

Russell was released from the Bureau of Prisons' custody and began his term of supervised release on August 3, 2020.  He sought permission from Officer Smith to relocate to Knoxville, Tennessee, so that he could reside with his girlfriend, L.B., and their two-year-old daughter. Russell's request was granted, and he relocated to Knoxville.

### B.  Violations of Supervised Release Conditions

On October 1, 2020, Russell was arrested on a criminal complaint in Knoxville for domestic assault.  According to the complaint, Russell physically assaulted L.B. by punching her with a closed fist above the eye, causing injury so severe that she had to receive professional medical attention.  As a result of his actions, Russell was told by the assigned probation officer in Tennessee to immediately return to the state of Michigan.  However, he did not do so.

On October 2, 2020, Russell was ordered by the state court in Tennessee not to have any contact with L.B.  On October 3, 2020, Russell unlawfully entered L.B.'s home through a window. A second criminal complaint was filed by the state of Tennessee for aggravated criminal trespassing and false imprisonment.

### C.  Arraignment and Conditions of Release on Bond

On October 5, 2020, a warrant for violation of supervised release was issued for Russell.

Order with Petition at PageID.15923-15926 (Dkt. 1331).  On February 10, 2021, Russell appeared before U.S. Magistrate Judge Kimberly J. Altman and was arraigned on the warrant for violation of supervised release.  Russell was released on an unsecured bond, with the special condition that he have no direct or indirect contact with L.B.  Order Setting Conditions of Release at PageID.16320 (Dkt. 1396).

### D.  March 2, 2021 Hearing

On March 2, 2021, this Court held a hearing on the supervised release violation warrant. Transcript of 3/2/21 Hr'g (Dkt. 1418).  At the hearing, Officer Smith provided testimony based on his conversations with Russell and L.B., as well as his review of (i) the Tennessee court documents, (ii) video documenting Russell's assault of L.B., and (iii) photographs documenting the aftermath of the assault.  Officer Smith testified that on October 1, 2020, Russell assaulted L.B., and she was treated at a local hospital for her injuries.  Id. at PageID.16385.  Officer Smith authenticated a video, which captures Russell striking L.B.  This video was played for the Court at the hearing. The video shows the interior hallway area of a residence, and it depicts Russell striking L.B. in the head, knocking her to the floor.  Even more disturbing, a small child—presumably Russell's minor child—is also seen in the video, during the commission of the assault and just a few feet away. Officer Smith also authenticated two photographs.  The first depicts a gash above L.B.'s eye and a welt on her head, which she received because of Russell striking her.  Id. at PageID.16388-16389. The second photograph shows droplets of blood on the carpet of the home that Russell shared with L.B.  Id. at PageID.16389.  Officer Smith testified that Russell admitted to him that he assaulted L.B., calling his relationship with L.B. "poisonous."  Id. at PageID.16402, 16407.

The Government admitted the affidavit of complaint filed in Knoxville and charging Russell with domestic assault, in violation of Tenn. Code § 39-13-111.  Id. at PageID.16386-

16387.   Regarding this incident, Officer Smith testified that, after appearing in court for the Tennessee court proceeding, Russell was released on bond and ordered by the Tennessee Court not to have contact with L.B.  Id. at PageID.16391.  Officer Smith further testified that Russell was also instructed by the assigned probation officer in Tennessee to return to the state of Michigan.  Id. at PageID.16386.  Yet, Russell failed to return.

Next, the Government admitted the second criminal complaint that was filed in Tennessee. Id. at PageID.16390-16391.  Regarding this incident, Officer Smith testified that, on October 3, 2020, L.B. reported to the local police that Russell had returned to her home by entering through a window and would not allow her to open the door for the police.  Officer Smith testified that a second criminal complaint was filed in Tennessee, this time charging Russell with aggravated criminal trespass, in violation of Tenn. Code § 39-14-406, and false imprisonment, in violation of Tenn. Code § 39-13-302.  Id. at PageID.16390-16391.[2]

The Government admitted evidence to show that—despite Magistrate Judge Altman's order that Russell not have any contact with L.B.—within hours of his release, Russell began to contact L.B.  Specifically, the Government admitted five exhibits documenting Russell's repeated and relentless contacts with L.B.  These exhibits are screenshots of Facebook messages that Russell sent to L.B.  As one of these exhibits shows, the first message is sent just after two o'clock in the morning, the day following his release.  L.B. warned Russell several times that he was not supposed to have any contact with her, but these warnings are ignored.[3]

_____

[2] All of the state charges were later dismissed without prejudice.  Id. at PageID.16402.

[3] Russell suggests that the messages were not sent by him, but by his cousin at his request. However, it is irrelevant whether Russell sent the messages or had someone else send them for him.  Magistrate Judge Altman's order is clear: Russell was to have no direct or indirect contact with L.B.  Moreover, Russell's suggestion is contradicted by the evidence admitted at the hearing. This evidence established that the name of the Facebook account that sent the messages is listed as "Taemoney Tae," which is an alias of Russell.  A similar alias, "Tae Tae," is identified as

## II. ANALYSIS

If a person violates conditions of supervised release, the Court may "revoke [the] release, and require the person to serve in prison all or part of the [supervised release] term . . . without credit for time previously served on postrelease supervision . . . ." 18 U.S.C. § 3583(e)(3).  To revoke a term of supervised release, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release."  18 U.S.C. § 3583(e)(3); see also United States v. Givens, 786 F.3d 470, 471 (6th Cir. 2015).  The preponderance standard requires a lesser quantum of proof and enables the trier of fact to make a determination of guilt that it could not make if the standard were that at trial—guilt beyond a reasonable doubt.  See In re Winship, 397 U.S. 358, 367-368 (1970).  Revocation hearings are "more flexible than a criminal trial," and courts may rely on any relevant evidence, including hearsay that is proven to be reliable.  United States v. Stephenson, 928 F.2d 728, 732 (6th Cir. 1991).[4]  Notably, a conviction for a new offense is not necessary for a finding of a violation, and proof of culpable conduct by a preponderance of the evidence is sufficient for revocation.  U.S.S.G. §7B1.1 n.1 ("The grade of violation does not depend on conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding.  Rather, the grade of the violation is to be based on the defendant's actual conduct.").

Here, there is ample evidence that Russell violated his supervised release by (i) committing

---

belonging to Russell in the Indictment. Id. at PageID.16405.  Further, the content of the messages does not refer to any third-party intermediary.  In fact, the sender of the messages repeatedly refers to wanting to see his child.  When L.B. tells "Tae" to stop contacting her, there is no response indicating that someone else is sending the messages.  At no point were the words "I'm writing on behalf of my cousin" mentioned in any of the messages.  Id. at PageID.16405

[4] "The Federal Rules of Evidence do not apply to supervised release revocation hearings."  United States v. Chames, 376 F. App'x. 578, 581 (6th Cir.2010) (citing Fed. R. Evid. 1101(d)(3)).

new offenses, including assault, aggravated criminal trespass, and false imprisonment; and (ii) failing to abide by the probation officer's order to return to the state of Michigan.  Each violation is addressed in turn.

Uncontroverted video evidence shows Russell striking L.B. with his fist, in front of their child on October 1, 2020.  Photographic evidence, the sworn complaint by police officers, and the testimony of Officer Smith also support that Russell committed the offense.  Moreover, Russell admitted to the assault as a means of explaining his conduct by placing it in the context of an alleged "poisonous" relationship.  The evidence, therefore, proves by more than a preponderance that Russell engaged in conduct constituting an assault, in violation of Tenn. Code § 39-13-101(a)(1).

The evidence also proves by a preponderance of the evidence that, on October 3, 2020, Russell made contact with L.B., despite being ordered not to by the Tennessee court.  Russell trespassed into L.B.'s apartment by crawling through an unlocked window.  When she saw Russell's car out front, L.B. texted a Sheriff's Lieutenant and asked him to send a patrol out.  When officers arrived and knocked on her door, Russell prevented L.B. from answering.  However, she was able to make contact via text with a neighbor to let the officers know what was occurring, and Russell was arrested.  Russell was charged with aggravated criminal trespass, in violation of Tenn. Code § 39-14-406(1), and false imprisonment, in violation of Tenn. Code § 39-13-302.

Finally, the preponderance of the evidence shows that Russell failed to return to Michigan as ordered by the assigned probation officer.  This conclusion is supported by the additional charges against Russell, as well Officer Smith's testimony, which the Court finds credible.[5]

---

[5] Although not raised in Officer's Smith's petition—because it had not yet occurred at the time the petition was made—the evidence also establishes that Russell continued to have contact with L.B. after his release on bond, despite being ordered not to by Magistrate Judge Altman.

Based on all of the foregoing, the Court finds that Russell has violated multiple conditions of his supervised release.  Specifically, Russell has committed multiple state offenses, and failed to return to Michigan when ordered by the assigned probation officer.  This conduct clearly violates the condition of Russell's supervised release that he "must not commit another federal, state or local crime," as well as the condition that Russell "must follow the instructions of the probation officer related to the conditions of supervision."  Judgment at 3-4.

Having found Russell in violation of the conditions of his supervised release, the Court now sets a sentencing date of May 12, 2021 at 11:00 a.m.

SO ORDERED.

Dated:  April 21, 2021
    Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge